The Public Utilities Commission filed a motion to dismiss the appeal of the Columbus Southern Ohio Electric Company, the ground upon which such motion was based being that "said company is not a proper party, not a real party in interest (affected by the order of the commission), and has suffered no loss or grievance from the order of the commission * * *."
A consideration of this motion requires a statement of some of the facts developed at the hearing, which are not in controversy. The city of Upper Arlington is on the northern boundary of the city of Columbus; the city of Grandview Heights is on the western and northern boundary of the city of Columbus, and both are contiguous to the city of Columbus and contiguous to each other. The northern terminus of the route, described in the certificate of public convenience and necessity granted to Cluff, is in an unincorporated territory in Franklin county known as Mountview, being a short distance north of the city of Upper Arlington, and the southern terminus is in downtown Columbus. The applicant's principal route begins at a point in the city of Columbus, extends next into unincorporated territory in Franklin county, thence into Columbus, *Page 480 
thence into Grandview Heights, thence again into the city of Columbus, thence into unincorporated territory in Franklin county known as University View, and thence into and through the city of Upper Arlington to the northern terminus as above designated. This route covers in part the route now being traversed by the busses of the Columbus Southern Ohio Electric Company, although the routes diverge substantially at points in the city of Columbus, in Grandview Heights and in the city of Upper Arlington.
The record discloses that the Columbus Southern Ohio Electric Company has been furnishing public passenger-transportation service within and between the cities of Grandview Heights, Upper Arlington and Columbus continuously since 1917 and has been furnishing public passenger transportation by motor busses, trolley coaches and streetcars within the city of Columbus continuously for more than 50 years.
When the applicant filed the application which is the basis of this proceeding (April 24, 1945), he was operating his motor busses over a portion of the route covered by his present application, which operation was under and pursuant to limited authority conferred by a so-called national emergency certificate originally issued by the Public Utilities Commission April 16, 1942, but which, by subsequent amendments, so extended the rights of the applicant that the authorized route of his busses became the same as that described in his present application for a permanent certificate.
The decision of the motion to dismiss the appeal does not involve the consideration of the merits of the claim made by the Columbus Southern Ohio Electric Company, but presents only the question of its right to contest the granting of the application and to appeal from the order of the Public Utilities Commission adverse to the appellant's claim and contention. The grounds *Page 481 
of the appeal are that the certificate issued was based upon a consideration and finding relative to intramunicipal transportation requirements, and that the operation of the transportation facilities, authorized by such certificate, will directly and adversely affect the transportation business long carried on by the appellant.
Under the provisions of Section 614-87, General Code, the Public Utilities Commission, in determining whether a certificate of public convenience and necessity should be issued, must take into consideration any and every established and operating transportation facility. The commission cannot otherwise properly perform one of the principal functions for which it was created — that of assuring efficiently operated and adequately maintained transportation service for the benefit of the public.
We have no difficulty in reaching a unanimous conclusion that the Columbus Southern Ohio Electric Company is a party aggrieved and, by virtue of the provisions of Sections 543, 545 and 614-43, General Code, possesses a right to appeal from the order of the commission, and that the motion of the Public Utilities Commission to dismiss the appeal must be overruled.
No issue was made as to the jurisdiction of the Public, Utilities Commission to hear and determine the application for a certificate of public convenience and necessity, since the route described originates outside a municipality and contemplates transportation service for residents outside the municipalities referred to.
The appellant's challenge of the validity of the finding and order of the commission is based upon the contention, as stated by appellant, that "upon an application for intercity rights, the Public Utilities Commission, *Page 482 
having jurisdiction to hear the application, nevertheless, is not empowered to issue a certificate of public convenience and necessity premised in whole or in part upon transportation requirements of persons whose ride is wholly within a municipality or municipalities immediately contiguous thereto or whose origin and destination are within the same municipality or municipalities immediately contiguous thereto."
The Public Utilities Commission has no power to grant a certificate authorizing an applicant to operate busses over an intracity route and to receive and discharge passengers whose entire ride is within the limits of immediately contiguous cities, such as Upper Arlington, Grandview Heights and Columbus, or within the boundaries of any of them. Its authority is limited to a consideration of the transportation needs of the residents of the unincorporated communities lying outside the municipal limits and for whom the proposed transportation service was ostensibly sought. The precise question presented by the record before us is the relevancy of the testimony of persons living in the contiguous cities named, who seek service between such cities, to establish the public convenience and necessity for transportation service for communities outside such cities. This question must be answered in the negative, and, for reasons which may be concisely stated, that conclusion requires a reversal of the order of the commission.
Upon the hearing before the commission 32 witnesses were called by the applicant. These witnesses may be divided into three general groups: (1) Residents in the unincorporated territory north of the city of Upper Arlington, known as Mountview, from which general area there were 13 witnesses consisting of property owners, business men and housewives; (2) residents of the northern section of the city of Upper Arlington, *Page 483 
generally referred to as north of Lane avenue, from which section there were 11 representative witnesses; and (3) persons who lived, worked or had some interest in the unincorporated territory north of Columbus and east of Upper Arlington, known as University View, from which there Were 8 witnesses.
It is disclosed by the record that the irrelevant testimony referred to was given probative value and was the controlling factor in the conclusion reached by the commission. The undisputed evidence is that checks made of the number of passengers transported by the applicant, operating under his temporary certificate, on May 17, May 23 and June 1, 1945, and the places where these passengers boarded and left the busses showed. that on May 17, 73.6% of the passengers hauled boarded and alighted within the limits of the municipalities of Upper Arlington, Grandview Heights and Columbus; that on May 23 the proportion was 71.2% and on June 1, 73.8%.
The applicant frankly stated that the proposed service could not be operated successfully if dependent upon the carrying of passengers whose origin and destination were at points other than within the cities of Upper Arlington, Grandview Heights and Columbus.
Although there is some evidence in the record indicating a public convenience and necessity for service between Mountview and University View and the city of Columbus, it is clear that the issuance of an order by the commission was not based thereon, but was based upon its conclusion that additional service should be provided for city residents, particularly of Upper Arlington and Columbus. However, that is a municipal matter, one for the determination of the cities involved, and the Public Utilities Commission may not usurp that function. Sections 614-84 and 614-86, General Code, and City of Cleveland
v. Public Utilities *Page 484 Commission, 130 Ohio St. 503, 200 N.E. 765; City of Cleveland
v. Public Utilities Commission, 134 Ohio St. 216,16 N.E.2d 339; Cleveland Ry. Co. v. Public UtilitiesCommission, 137 Ohio St. 302, 28 N.E.2d 638.
The record discloses that negotiations for increased transportation service are in progress between the authorities of the city of Upper Arlington and the Columbus Southern Ohio Electric Company, and such fact was at least in part the basis for the protest of the city of Upper Arlington against a consideration of the application involved in these proceedings.
It follows for the reasons stated that the order of the Public Utilities Commission should be and is reversed.
Order reversed.
BELL, WILLIAMS, TURNER, MATTHIAS and HART, JJ., concur. *Page 485